**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DWAYNE MORGAN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case number 4:07cv0877 TCM** |
| | ) | |
| **TROY STEELE,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM AND ORDER

The 28 U.S.C. § 2254 petition of Dwayne Morgan ("Petitioner"),[1] a Missouri prisoner serving concurrent terms of imprisonment totaling life without probation or parole, for federal habeas corpus relief, including a request for evidentiary hearing, is before the undersigned United States Magistrate Judge for review and final disposition.[2] Respondent filed a Response to the Order to Show Cause Why a Writ of Habeas Corpus Should Not

---

[1] The record shows that Petitioner is also referred to as "Charlie." (See, e.g., Resp't Ex. B at 432, 707.)

[2] This matter is before the undersigned United States Magistrate Judge on consent of the parties. 28 U.S.C. § 636(c).

To convey and support his habeas claims, Petitioner attached to his petition portions of his brief on direct appeal (Pet. [Doc. 1 at 11-36]) and portions of his amended postconviction motion (Pet. [Doc. 1 at 38-61].) These materials are also part of Respondent's Exhibits D and H, respectively. (See Resp't Ex. D at 4-29; Resp't Ex. H at 3-26.)

Issue (Response).[3] Petitioner filed a reply, including requests for the appointment of counsel, the appointment of a special master, and an evidentiary hearing. Finding the claims in the federal habeas petition are procedurally barred and lack merit, the petition will be denied, as will Petitioner's requests for an evidentiary hearing and for the appointment of counsel and a special master.

## Background

Petitioner was charged with first degree murder in violation of Missouri Revised Statutes § 565.020.1 and armed criminal action in violation of Missouri Revised Statutes § 571.015 in the shooting death of Kimoley Morgan[4] on July 3, 1998, in the City of St. Louis, Missouri; assault in the first degree in violation of Missouri Revised Statutes § 565.050 and armed criminal action in violation of Missouri Revised Statutes § 571.015 for attempting to kill or cause serious physical injury to John Walls by shooting him on July 3, 1998, in the City of St. Louis, Missouri; and burglary in the second degree in violation of Missouri Revised Statutes § 569.170 for knowingly and unlawfully entering Kimoley's home in the City of St. Louis, Missouri, to assault her, on July 2, 1998.[5] (Resp't Ex. C at 7-8.)

Prior to trial, the trial court held an evidentiary hearing on Petitioner's motion to

---

[3] Because Petitioner's social security number is disclosed in Respondent's Exhibit C the Court will direct the Clerk of Court to place that exhibit under seal.

[4] Because the murder victim and Petitioner have the same last name, the Court will refer to the victim as Kimoley. The Court means no disrespect by referring to her by her first name.

[5] An additional charge against Petitioner, for aggravated stalking of Kimoley in violation of Missouri Revised Statutes § 565.225.2, was severed for trial (Resp't Ex. C at 147; Resp't Ex. B at 3) and subsequently nolle prosed by the State (Resp't Ex. C at 9, 155; Resp't Ex. B at 1002).

suppress statements, and heard the testimony of two detectives and two officers of the City of St. Louis Police Department (Police Department).  (See Resp't Ex. B at 32-119.)  In relevant part, Detective Alfred Blakemore testified that, on July 4, 1998, after he advised Petitioner of his rights and after Petitioner signed a warning and waiver form, Petitioner provided a written statement regarding his breaking into Kimoley's locked home on July 2, 1998.  (Id. at 32-35, 43-44.)  Additionally, Detective Gary Stittum testified that he advised Petitioner of his rights before Petitioner made an oral statement on July 3, 1998, that he was not involved in Kimoley's death and then provided information about where he was and what he had done from the afternoon of July 2, 1998, through about 9:30 a.m. on July 3, 1998. (Id. at 52-56.)  At the conclusion of the hearing, the trial court denied Petitioner's motion to suppress written and oral statements.  (Resp't Ex. B at 119; Resp't Ex. C at 147.)

Petitioner also filed a request that eyewitness identification expert Michael R. Leippe, Ph.D, be permitted to testify at trial.  (See, e.g., Resp't Ex. C at 61-69; see also id. at 15-20.) The State orally moved in limine to exclude Dr. Leippe's testimony and filed a memorandum of law in support of that motion.  (Resp't Ex. A at 1; Resp't Ex. C at 32-48.)  The trial court held a pretrial hearing at which Dr. Leippe testified, and then granted the State's motion in limine and excluded Dr. Leippe's testimony.  (Resp't Ex. A; Resp't Ex. B at 6-17.)

In addition to the testimony of Detectives Blakemore (Resp't Ex. B at 741-55) and Stittum (id. at 696-741), the State presented at trial the testimony of four individuals who worked with the Police Department:  Officer Cletus Frederking, who responded to the scene of the alleged burglary (id. at 443-472); Officer Lynman Stamps, a police officer who

responded to the scene of the shooting (id. at 472-94); Officer George Weindel, a police officer who collected and preserved the physical evidence, and took photographs, at the scene of the shooting (id. at 541-65); and Frank Stubits, a firearms and toolmark examiner who testified about shell casings and shot pellets from the scene of the shooting, the hospital where Kimoley was taken, and the morgue (id. at 681). Dr. James Anthony Petterchak, a pathologist with the St. Louis City Medical Examiner's Office who performed the autopsy on Kimoley, testified that Kimoley died from a shotgun wound to the head and neck. (Id. at 827-38.) The State also introduced a warning/waiver form initialed by Petitioner regarding the burglary charge, various pictures, and shot pellets and casings. (See, e.g., id. at 6-8.)

Additionally, the State presented the testimony of the assault victim, John Henry Walls, who was with Kimoley in front of her home in the City of St. Louis just before the shooting began (id. at 761-825); two eyewitnesses, Ernest Day, Sr. and Robert Durham, who were on the street near where the shooting took place (id. at 567-680 and 494-538, respectively); and Kimoley's daughter, Erica Bates, (id. at 430-42) and nephew, Nicholas Bates (id. at 756-61).

Erica[6] testified that she had been introduced to Petitioner as "Charlie"[7] and called him "Charlie"; Petitioner and her mother had started dating in 1994 and were married since May 1997; in May 1998, Kimoley moved with her children to the home in the City of St. Louis

_____

[6] The Court will refer to Erica and Nicholas by their first names because they have identical last names. The Court means no disrespect by referring to them by their first names.

[7] For an explanation of why Petitioner was called "Charlie," see the testimony of Detective Gary Stittum (Resp't Ex. B at 707).

where the shooting took place; and Petitioner lived with them in that home from the end of May 1998 until shortly before the shooting.  (Id. at  430-36.)

Nicholas testified that, in 1998, he lived about three blocks from Kimoley's home in the City of St. Louis; that during the early evening of July 2, 1998, he was with Kimoley at her home waiting to walk her to his home; while they walked to his home they saw a red truck he recognized as having been driven by Petitioner before; and after Kimoley noticed the red truck, she called the police over, and then they walked to his home.  (Id. at 756-59.)

Detective Blakemore testified to the waiver form Petitioner signed regarding the burglary charge.  (Id. at 741-55.)

Durham, testified that, late on July 2, 1998, or early on July 3, 1998,  he and Day left Day's mother's home, near where Kimoley lived, and as he walked to his car he noticed some people on the front steps of a nearby building and then heard something he "thought might have been fireworks, and . . . [then knew] it was a gun," and ran to and got in his car, and helped Day get in the car.  (Id. 495-501.)  While they were in the car, Day reported to him what Day was seeing, and Durham did not get a look at the person with the gun but saw "an individual . . . running towards [Durham]" who had looked like he had fallen after the shot went off, and saw a person walk across the street, get into a car, and drive away "quickly." (Id. at 506-08.)

Day testified he and Durham left his mother's home late at night on July 2, 1998, and, while he was walking to the car, he saw a couple at an apartment building across the street and "a guy . . . with a shotgun" down near his leg; then the man from the couple "look[ed]

like he dashed and fell to the ground" when "the gunshot . . . went off" while the gun was pointed "[d]irectly at the gentleman," and then that man got up and continued running away. (Id. at 569-78.) As Day was getting in his car, he heard the woman screaming "no" and then heard a second shot, and the gunman walked back to his car and drove away in the same direction as the man who had run away. (Id. at 577-81.) In a photo lineup and at trial Day identified Petitioner as the man who had fired the gun that night; Day also identified in a photograph the Lincoln car as the big, dark blue car the gunman was driving. (Id. at 582-92, 626-31, 680.)

Walls stated he picked Kimoley up from her sister's home, around 11:45 p.m. on July 2, 1998, and drove to Kimoley's apartment, and stood with her by the front door of the building while she looked for her key. (Id. at 764-66.) While standing there, Walls looked around and saw a "guy [across the street] getting out of [a Lincoln Continental] car with a gun." (Id. at 764-67.) Walls touched Kimoley and asked her if that was her husband, she turned around and started screaming "no, Charlie, no." (Id. at 768, 770.) Walls told her to run, took off running himself, a shot was fired at him, he fell in the street, heard a second shot, got up and continued running, and called the police, who picked him up a distance from the shooting. (Id. at 768-72.) Prior to trial, Walls identified the car the gunman got out of, and did not identify Petitioner in a line-up. (Id. at 770-71.)

Detective Stittum testified that on July 3, 1998, while investigating the shooting, he located a Lincoln Continental car registered to Petitioner parked at a home in Washington Park, Illinois, and, while waiting for it to be towed, saw a red truck that was also registered

to Petitioner, being driven by Petitioner.  (Id. at 696-702.)  Stittum took Petitioner to the

Police Department for questioning, and gave him his rights, including his right to remain

silent.  (Id. at 702-03, 710-11.)  Petitioner indicated he understood his rights.  (Id. at 704.)

Petitioner told Detective Stittum that

> on July the 2nd between 12:30 and 1:30 p.m. . . . he went by Kimoley['s] . . . apartment to pick up some clothing.  Upon entering the apartment he observed the door key that he had did not fit the lock.  The lock did not turn.  He then left the apartment, went out to his truck where he obtained a screwdriver and attempted to open the door that way.

> He was unsuccessful.  He went to the rear of the apartment, broke out a window, and gained entry to the apartment.  Once in the apartment he took two pair of pants, two sweaters. . . . [H]e [then] left the apartment and drove to Washington Park, Illinois.

> . . . [B]etween 4:30 and 7:30 p.m. that same evening . . . he stopped by Wanda Watson's house over in East St. Louis, Illinois.  He left there and returned to St. Louis.  Once he returned to St. Louis he observed that his Lincoln Continental was, in fact, parked in front of Kimoley's apartment.  He . . . drove his truck to [a nearby] Schnucks . . . parking lot, and came back and got his Lincoln Continental.

> \*   \*   \*

> . . . He drove the car to . . . a subdivision within East St. Louis, Illinois. . . . .  He . . . locate[d] an Orleaus Haynes[, who is one of his stepsons, and t]he two of them returned to St. Louis.  He indicated that Orleaus drove his Lincoln Continental back to Washington Park [and he did not explain what happened to the red truck].

> \*   \*   \*

> . . . Between 10:00 and 10:30 he stopped at Charlie Lott's residence in Washington Park and spoke with [Lott's] son. . . .

> \*   \*   \*

> . . . [At] about eleven o'clock p.m. . . . he returned to Wanda Watson's

apartment or home afterwards and discovered that the storm door was locked. He waited from ten to twenty minutes then he left, returned to Washington Park between 11:30 and 11:45 p.m., he fell asleep in the truck which [wa]s parked in the driveway and he slept for about two to three hours.

\*    \*    \*

[On the m]orning of July 3rd between two and three o'clock in the morning he returned to Miss Watson's residence and observed the storm door was, in fact, unhooked. He entered the structure, sat on the sofa. At about 5:00 a.m. Miss Watson got up and prepared for work. He fell asleep. . . and awakened between 9:00 and 9:30 that morning.

\*    \*    \*

. . . After he got up he returned to Washington Park because he had to install a storm door . . . .

(Id. at 705-08; 727.)

Petitioner did not testify, and presented the testimony of Officer Ralph Campbell of the Police Department who, in September 1998, took measurements at the scene and interviewed various individuals, including Karen Wilson, Durham, and Day (id. at 846-78); Paul J. Stevens, a photographer who took pictures of the area of the scene (id. at 880-90); and three of Petitioner's relatives. Wilson, who lived near the scene of the shooting, described seeing a dark car with a silver luggage rack, different from the car Petitioner was seen exiting, and then "gun fires from [that dark car]" during the early morning hours of July 3, 1998. (Id. at 891-909, 899.) Additionally, Petitioner's ex-wife, Erma Morgan, Petitioner's stepdaughter, Sherice Haynes, and Petitioner's daughter, Chicykee Morgan, testified that they saw Petitioner late the night of July 2, 1998, at their home in Washington Park and saw Petitioner's Lincoln Continental, during the night of July 2, 1998 and the next morning,

parked at their home.  (Id. at 909-51.)

Petitioner unsuccessfully moved for judgment of acquittal at the close of the State's case and at the close of all the evidence.  (Id. at 843-45, 951-52; Resp't Ex. C at 100-101, 102.)

As part of the instructions read to the jury by the trial court, Instruction No. 9 stated:

As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

That on July 3, 1998, in the City of St. Louis, State of Missouri, the [Petitioner] attempted to kill or cause serious physical injury to John Walls by shooting him,

then you will find the [Petitioner] guilty under Count III of assault in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the [Petitioner] not guilty of that offense.

As used in this instruction, the term "serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss of impairment of the function of any part of the body.

If you do find the [Petitioner] guilty under Count III of assault in the first degree, you will assess and declare the punishment at imprisonment for a term of years fixed by you, but not less than five years and not to exceed fifteen years.

(Resp't Ex. C at 132.)  Petitioner's counsel did not object to this instruction on the grounds that it lacked a definition of "attempt."  (See Resp't Ex. B at 957-58.)

The jury returned a verdict finding Petitioner guilty of murder in the first degree and armed criminal action in the shooting death of Kimoley on July 3, 1998 (Resp't Ex. C at 142,

143), first degree assault and armed criminal action in the attempted shooting of Walls on July 3, 1998 (id. at 144, 145), and first degree trespassing, rather than the charged offense of second degree burglary, with respect to the unlawful entry into Kimoley's home on July 2, 1998 (id. at 146).

After denying Petitioner's motion for new trial (Resp't Ex. B at 1002), the trial court sentenced Petitioner to a term of life imprisonment without the possibility of probation or parole on the first degree murder conviction and to varied concurrent terms of imprisonment on the three other felony convictions. (Id. at 1010; Resp't Ex. C at 172-74.) As to the trespassing conviction, a misdemeanor, the trial court sentenced Petitioner to time served after noting Petitioner had already served the six-month term recommended by the jury. (Resp't Ex. B at 1011; Resp't Ex. C at 172-74.)

The Missouri Court of Appeals granted Petitioner leave to file a late notice of appeal, and Petitioner pursued two points on direct appeal. (Resp't Ex. C at 175; Resp't Ex. D.) First, Petitioner argued the trial court erred in overruling Petitioner's motion to suppress statements and admitting those statements, in violation of Petitioner's due process right to a fair trial, because there was no evidence supporting the trial court's conclusion that Petitioner had understood he did not have to make a statement to Detective Stittum. (Resp't Ex. D at 10, 13.) Petitioner urged he was prejudiced by this error because Petitioner's statements were inconsistent with his alibi defense. (Id.) For his second point, Petitioner argued the trial court abused its discretion, and violated his federal constitutional right to present a defense and have a fair trial, by refusing to admit Dr. Leippe's testimony regarding the reliability of

eyewitness identification and fair lineup procedures.[8] (Id. at 11, 18.) Petitioner argued that this error prejudiced him in that "he was not able to present testimony that . . . Day's identification should not eliminate reasonable doubt." (Id.)

The Missouri Court of Appeals affirmed the judgment of conviction and sentence in a per curiam order. (Resp't Ex. F.) With respect to Petitioner's claim the State failed to show that he was informed of and understood his right to remain silent before he made his statement to Detective Stittum, the appellate court stated in an unpublished memorandum supporting its order:

> Prior to the admission of [Petitioner]'s statements, the [trial] court heard the following testimony
>
> Q. [by prosecutor]: Did you read [Petitioner] his rights?
>
> A. [by Stittum]: Yes.
>
> Q. What were the rights you read him?

---

[8] Specifically, in his second point on direct appeal, Petitioner argued

Dr. Lieppe would have testified 1) [that] lineup identifications will be less likely to be biased if the witnesses are told the offender may not be in the lineup; 2) [that] information received by the witness after the event may affect the identification of a suspect; 3) [that] a witness' memory can be affected by the amount of time the witness is exposed to an event and the amount of memory processing that actually occurs during the event; for instance, the level of processing is decreased by stress or the presence of a weapon; 4) [that] a witness' memory can be affected by unconscious transference, which occurs when a person recognizes a face, but from a context other than the offense the person witnessed; [] 5) [that] a witness loses memory over time, with the greatest rate of loss occurring within days of the remembered event; 6) [that] a witness' confidence in his memory is "only a very modest predictor" of the memory's accuracy; and 7) [about] how to conduct a fair lineup.

(Resp't Ex. D at 11, 18.)

A. I told [Petitioner] he had a right to remain silent. Anything he said could be used against him. He had a right to an attorney, one present while he was being questioned. If he could not afford an attorney one would be appointed if he so desired.

Q. Did he indicate that he understood his rights?

A. Yes.

Q. Now, did he agree to make a statement to you?

A. Yes.

As indicated by the record, the prosecutor clearly made its required prima facie showing that [Petitioner] was informed of his right to remain silent and that he understood that right. Point denied.

(<u>Id.</u> at 2 (third and fifth alterations in original)).

Regarding Petitioner's second point, the Missouri Court of Appeals stated the trial court has discretion to admit or exclude expert testimony and the trial court's ruling will be reversed only for abuse of that discretion, which occurs when the trial court's "ruling is arbitrary and unreasonable or is clearly against the logic of the circumstances." (<u>Id.</u> at 3.) The court found the Missouri Supreme Court had twice addressed the issue of expert testimony on eyewitness identification and upheld the exclusion of such testimony where the defendant had an opportunity fully to cross-examine the eyewitness and an opportunity to challenge the identification in statements or argument to the jury, citing **State v. Lawhorn**, 762 S.W.2d 820 (Mo. 1988) (en banc), and **State v. Whitmill**, 780 S.W.2d 45 (Mo. 1989) (en banc). (Resp't Ex. F at 3-4.) Therefore, the appellate court rejected Petitioner's argument that **State v. Skillicorn**, 944 S.W.2d 877 (Mo. 1997) (en banc) (allowing testimony of an

FBI agent that suspects minimize their involvement in criminal activity), <u>overruled on other grounds</u> <u>Joy v. Morrison</u>, 254 S.W.3d 885, 888 n. 7 and 889 (Mo. 2008) (en banc), controlled.  (Resp't Ex. F at 4.)  The Missouri Court of Appeals concluded Petitioner had "ample opportunity to cross-examine Day on his identification of [Petitioner and Petitioner] pointed out alleged faults with Day's identification during closing argument.  Therefore, the trial court did not abuse its discretion in refusing to admit Dr. Leippe's testimony."  (<u>Id.</u>) (footnote omitted).  In a footnote, the Missouri Court of Appeals concluded:

> At oral argument, counsel for [Petitioner] urged that we transfer this case to the Missouri Supreme Court to reexamine the law on this issue.  We decline to do so for two reasons.  First, the considerations involved are no different today than they were when <u>Lawhorn</u> and <u>Whitmill</u> were decided.  Second, [Petitioner] significantly overstates the importance of Day's identification.  The most compelling identification of [Petitioner] as the shooter in this case did not come from Day; it came from the murder victim, [Petitioner]'s [] wife, who exclaimed "no, Charlie, no" just before [Petitioner], who sometimes went by the name "Charlie," shot her.  The victim could surely be presumed to be able to recognize her own [] husband and her identification of him would not be subject to the same factors that might affect identification by a total stranger.  Thus, we disagree that Dr. Leippe's testimony was essential to [Petitioner]'s case.

(<u>Id.</u> at 4-5 n.1.)

The appellate court issued its direct-appeal mandate on September 18, 2001.  <u>See</u> **State v. Morgan**, No. ED78268 (Mo. Ct. App.), at Missouri Case.net https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited Aug. 30, 2010).  Petitioner did not seek transfer to the Missouri Supreme Court or file a petition for writ of certiorari in the United States Supreme Court.  (<u>See</u> <u>id.</u>; Pet. at 3 [Doc. 1].)

Petitioner timely filed a pro se motion for postconviction relief under Missouri

Supreme Court Rule 29.15 (Resp't Ex. H at 3-14) and then, through counsel, an amended motion for postconviction relief, including a request for evidentiary hearing (id. at 16-31.) In his amended motion, Petitioner alleged that he was denied the effective assistance of trial counsel because his trial attorney (a) failed effectively to communicate to him that the decision whether to testify at trial was Petitioner's alone (id. at 19-23); (b) called Haynes, Petitioner's stepdaughter, to testify on Petitioner's behalf and, during cross-examination, she "testified contradicting [Petitioner]'s prior statements to police" (id. at 23-26); and (c) failed "to object to Instruction No. 9 on [the] grounds[] that the instruction failed to define 'attempt,' an essential element of the . . . offense of assault in the first degree" (id. at 26-33). Petitioner also alleged his attorney on direct appeal provided ineffective assistance of counsel by not raising on appeal the trial court's plain error in submitting Instruction No. 9 without a definition of "attempt." (Id. at 33 and 38.)

After a limited evidentiary hearing[9] at which Petitioner and his trial attorney testified, the motion court[10] denied Petitioner's postconviction motion. (Id. at 54-60.) The motion court found Petitioner's own testimony refuted his claim that his trial attorney had failed to advise him that the decision whether or not to testify at trial was his to make; and concluded the attorney's advice that Petitioner should not testify was sound "in light of the evidence that

_____

[9] The motion court restricted the evidentiary hearing to "evidence . . . on the issues of ineffective assistance of counsel regarding [Petitioner]'s decision on not testifying and regarding the calling of alibi witnesses." (Resp't Ex. H at 51.)

[10] The judge presiding over the postconviction motion proceeding also presided over the trial.

could have come in through cross-examination." (Id. at 58.) With respect to Petitioner's contention his trial attorney was ineffective in presenting Haynes as a witness, the motion court found the trial attorney's conduct regarding Petitioner's witnesses, including Haynes, was not unreasonable. (Id. at 59.) The motion court specifically stated:

> that counsel was dealing with uncooperative family members, an alibi witness who said she could not help, and statements of [Petitioner] that were inconsistent. The [motion court] further believes there is no reasonable possibility that [Petitioner] would not have been found guilty if Ms. Haynes had not testified.

(Id.) As to the claim Petitioner's counsel failed to pursue a challenge to Instruction No. 9 due to the absence of a definition of "attempt," the motion court concluded the MAI-CR3d version in effect at the time of trial "did not require that the term 'attempt' be defined," the instruction given to the jury "complied with the applicable MAI-CR3d instruction[,] and there would have been no basis for an objection [to it at trial] or for raising the issue on appeal." (Id. at 59-60.)

In his timely postconviction appeal, Petitioner raised one point: that the motion court erred in denying, without an evidentiary hearing, Petitioner's claims that his trial attorney and his appellate attorney were ineffective in failing to present challenges before the trial court and on appeal, respectively, to Instruction No. 9 due to the absence of a definition of "attempt." (Resp't Ex. I at 18, 20.)

The Missouri Court of Appeals affirmed the postconviction court's judgment in a per curiam order. (Resp't Ex. K.) In the unpublished memorandum supporting the order, the Missouri Court of Appeals stated in relevant part:

> [Petitioner] argues that attempt means a substantial step toward the completion of the offense, which is an essential element of the charge and must be included in the instruction.

and discussed at length "what the law was at the time of [Petitioner]'s trial in April 2001." Resp't Ex. K at 2. Ultimately, the state appellate court concluded that, "[u]nder [one] view of the law at the time . . . counsel's failure to object to an instruction that contained no definition of attempt may not have been unreasonable," (id. at 5), and under another view of the law the trial attorney's failure to object to such an instruction "may have been unreasonable" (id. at 5-6). The appellate court further concluded that

> [e]ven if counsel should have objected, there is . . . no reasonable probability that, but for counsel's error, the result of the trial would have been different. There was evidence at trial establishing that a shot had been fired at the victim. This had to have constituted a substantial step towards causing the victim serious physical injury. Thus, even if counsel had successfully objected and the instruction was rewritten to include the substantial step language, there was sufficient evidence to establish the substantial step and to find [Petitioner] guilty on the first-degree assault charge.

Id. at 6 (citations omitted).

With respect to Petitioner's claim that the motion court erred in denying him relief on the claim that his appellate attorney provided ineffective assistance by not raising on direct appeal the trial court's plain error in failing to include an attempt definition in Instruction No. 9, the Missouri Court of Appeals noted the issue "would have been reviewable only for plain error because trial counsel had not objected [and c]ounsel is not ineffective for failing to raise an unpreserved error on appeal." (Id. at 7.) The appellate court concluded that if "this issue [had] been appealed it would not have required reversal," specifically stating

Th[e Missouri Court of Appeals] undertakes review for plain error only where manifest injustice or a miscarriage of justice would otherwise result. [Missouri Supreme Court] Rule 30.20. This error cannot have resulted in a manifest injustice or miscarriage of justice because, as discussed above, the evidence established the substantial step and because attempt was not even in dispute. [Petitioner]'s defense was not that his actions did not constitute a substantial step towards causing a serious physical injury – rather, he claimed he was not involved in the shooting at all. At trial, and at the evidentiary hearing on his post-conviction motion, [Petitioner] contended that he had an alibi for his whereabouts at the time of the shooting and that the eyewitness misidentified him as the shooter. "[A] trial court's failure to correctly instruct the jury on the element of the crime charged that was undisputed at trial cannot result in manifest injustice." State v. Wurtzberger, 40 S.W.3d 893, 898 (Mo. banc 200[1]) (not plain error to instruct using common law elements of attempt where attempt not a disputed matter at trial; defendant did not deny that drugs were attempted to be made on his property, but claimed he was not involved).

Id. at 7 (third alteration in original) (one citation omitted).

After Petitioner unsuccessfully sought transfer to the Missouri Supreme Court, the appellate court issued its postconviction mandate on February 6, 2007. See **Morgan v. State**, No. ED87398 (Mo. Ct. App.), at Missouri Case.net https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited Aug. 31, 2010).

Petitioner then timely filed his petition for federal habeas relief, presenting six grounds for relief, the two issues he had pursued on direct appeal and the four claims he had pursued in his amended postconviction motion. In summary, Petitioner argues his federal constitutional rights have been violated because (1) his oral statements to Detective Stittum were involuntary and should not have been admitted at trial; (2) Dr. Lieppe's testimony about the unreliability of eyewitness identification should have been admitted at trial; (3) his trial attorney provided ineffective assistance of counsel in failing effectively to communicate that

the decision whether or not to testify was Petitioner's decision to make; (4) his trial attorney was ineffective in calling Haynes as a defense witness; (5) his trial attorney was ineffective in failing to object to Instruction No. 9 because it did not define "attempt"; and (6) his attorney on direct appeal was ineffective in failing to argue the trial court plainly erred in giving Instruction No. 9 without a definition of "attempt."

Respondent counters that grounds three and four are procedurally barred and the other grounds for federal habeas relief lack merit.

### Discussion

Procedural Bar.  With respect to the ineffective assistance of trial counsel claims set forth in grounds three and four, Respondent argues that those claims are procedurally defaulted because they were not presented in Petitioner's postconviction appeal.

"Claims that have not been presented to the state courts, and for which there are no remaining state remedies are procedurally defaulted." **Skillicorn v. Luebbers**, 475 F.3d 965, 976 (8th Cir. 2007); accord **Echols v. Kemna**, 511 F.3d 783, 785 (8th Cir. 2007) ("If a petitioner has not presented his habeas corpus claim to the state court, the claim is generally defaulted" (internal quotation marks omitted) (quoting Carney v. Fabian, 487 F.3d 1094, 1096 (8th Cir. 2007)).  A postconviction proceeding is the exclusive procedure for pursuing in state court ineffective assistance of counsel claims.  Mo. S. Ct. Rule 29.15(a).  In relevant part, claims that should have been but were not presented in the appeal from a denial of a postconviction motion are procedurally defaulted.  See **Interiano v. Dormire**, 471 F.3d 854, 856 (8th Cir. 2006) (claims not presented in a Rule 29.15 postconviction motion or included

in appeal are procedurally defaulted); **Osborne v. Purkett**, 411 F.3d 911, 919 (8th Cir. 2005) (claim raised in a Rule 29.15 postconviction motion but not presented on appeal was procedurally barred); **Sweet v. Delo**, 125 F.3d 1144, 1150 (8th Cir. 1997) (a claim not raised in the postconviction appeal was defaulted).

Here, Petitioner did not pursue in his postconviction appeal either of the ineffective assistance of trial counsel claims which he now pursues as grounds three and four in his federal habeas petition. Because those claims were not properly pursued in Missouri's courts, they are procedurally defaulted.

"Unless a habeas petitioner shows cause and prejudice or that he is actually innocent of the charges, a [federal habeas] court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims." **Skillicorn**, 475 F.3d at 976-77. "'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" **Greer v. Minnesota**, 493 F.3d 952, 957 (8th Cir. 2007) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). There is no exhaustive catalog of the objective impediments, nor have the precise contours of the cause requirement been clearly defined. **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999). What has been established is that a "fail[ure] to raise [a] claim despite recognizing it, does not constitute cause for a procedural default." **Murray**, 477 U.S. at 486.

To the extent Petitioner may argue that his postconviction appellate counsel's conduct in failing to raise these issues on appeal constitutes cause (<u>see</u> Reply at 2 [Doc. 14]), the Court disagrees. Any "ineffective assistance of postconviction counsel is not a cause for procedural default." **Oglesby v. Bowersox**, 592 F.3d 922, 925-26 (8th Cir.), <u>petition for cert. filed</u>, __ U.S.L.W. __ (U.S. June 17, 2010) (No. 09-11484); <u>accord</u> **Zeitvogel v. Delo**, 84 F.3d 276, 279 (8th Cir. 1996) ("[t]o establish cause, [the petitioner] must show something beyond the control of postconviction counsel, like state interference, actually prevented postconviction counsel from raising the claims and presenting the evidence in state court"). In **Interiano**, the Eighth Circuit did not excuse a default caused in part by postconviction counsel's failure to raise known claims in the appeal from the denial of the postconviction motion. **Interiano**, 471 F.3d at 857. Similarly, the omission from Petitioner's postconviction appeal of the issues now presented in grounds three and four of the federal habeas petition is not to be excused.

Because no cause has been established for Petitioner's procedural default, it is unnecessary to consider whether he has demonstrated prejudice. **Abdullah v. Groose**, 75 F.3d 408, 413 (8th Cir. 1996).

Petitioner's defaulted grounds may be reached absent a showing of cause and prejudice for his procedural default if he establishes that a failure to do so will result in a fundamental miscarriage of justice. "Procedurally barring a claim that establishes actual innocence is considered a fundamental miscarriage of justice." **Cox v. Burger**, 398 F.3d 1025, 1031 (8th Cir. 2005). A showing of actual innocence requires new evidence and a

"show[ing] that 'it is more likely than not that no reasonable juror would have convicted him in light of th[at] new evidence.'" **Osborne**, 411 F.3d at 920 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). "'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'" **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting Schlup, 513 U.S. at 316).

Petitioner does not submit any new evidence of his actual innocence, nor does he allege that such evidence exists.

For the foregoing reasons, grounds three and four in Petitioner's habeas petition are procedurally barred and will not be considered on their merits.

Merits. The Court will address the merits of Petitioner's other grounds for relief: that his oral statements to Detective Stittum were involuntary and should not have been admitted at trial (ground one); that he should have been allowed to present Dr. Lieppe's testimony about the unreliability of eyewitness identification (ground two); that his trial counsel provided ineffective assistance by failing to object to Instruction No. 9 due to the absence of a definition of "attempt" (ground five); and that his direct appeal counsel provided ineffective assistance by failing to pursue on direct appeal the argument that the trial court plainly erred in giving Instruction No. 9 without a definition of "attempt" (ground six).

Title 28 U.S.C. § 2254(d) mandates that a federal court grant habeas relief on a claim that was adjudicated on its merits by the State courts *only* if the adjudication "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States'" or "'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" **Collier v. Norris**, 485 F.3d 415, 421 (8th Cir. 2007) (quoting § 2254(d)); <u>accord</u> **Christenson v. Ault**, 598 F.3d 990, 994 (8th Cir. 2010). "'[A] decision is "contrary to" federal law . . . if a state court has arrived "at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if it "confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent" but arrived at an opposite result.'" **Collier**, 485 F.3d at 421 (quoting <u>Davis v. Norris</u>, 423 F.3d 868, 874 (8th Cir. 2005)) (all but first alteration in original); <u>accord</u> **Losh v. Fabian**, 592 F.3d 820, 823 (8th Cir. 2010). "'A state court unreasonably applies clearly established federal law when it "identifies the correct governing principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."'" **Collier**, 485 F.3d at 421 (quoting <u>Davis</u>, 423 F.3d at 874) (alteration in original).  This standard requires that the state court's application be "objectively unreasonable." **Mark v. Ault**, 498 F.3d 775, 786 (8th Cir. 2007); <u>see</u> **Losh**, 592 F.3d at 823 (under the unreasonable application clause of the AEDPA, a habeas petition may be granted "only if the state court applied the correct governing legal principle in an objectively unreasonable manner").  "It is not enough for the federal habeas court to conclude that, in its independent judgment, it would have applied federal law differently from the state court. . . ." **Mark**, 498 F.3d at 786.  Importantly, "[o]nly rulings in Supreme Court decisions issued before the state court acts

are considered clearly established federal law, for a state court does not act contrary to or unreasonably apply clearly established federal law if there is no controlling Supreme Court holding on point." **Losh**, 592 F.3d at 823 (citations omitted). The state court does not need to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" **Revels v. Sanders**, 519 F.3d 734, 739 (8th Cir.) (quoting Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)), cert. denied, 129 S.Ct. 598 (2008).

"[T]he 'summary nature' of the [state court's] discussion of [a] federal constitutional question does not preclude application of [§ 2254's] standard." **Brown v. Luebbers**, 371 F.3d 458, 462 (8th Cir. 2004) (en banc); accord **Weaver v. Bowersox**, 438 F.3d 832, 839 (8th Cir. 2006) (quoting Brown, 371 F.3d at 462). A state court's summary decision is presumed to be on the merits for purposes of habeas review. **Carter v. Bowersox**, 265 F.3d 705, 712 (8th Cir. 2001); see **Weaver** 438 F.3d at 839 (concluding a summary disposition by the Missouri Supreme Court was an "adjudication of the [habeas claims] on the merits").

Additionally, in a federal habeas action pursued by a state prisoner, "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The deference owed by a federal habeas court to a state court's findings of fact includes deference to state court credibility determinations, **Smulls v. Roper**, 535 F.3d 853, 864 (8th Cir. 2008) (en banc), cert. denied, 129 S.Ct. 1905 (2009), and to "[a] state court's findings of fact made in the course of deciding" an ineffective assistance of counsel claim, **Odem v. Hopkins**, 382

F.3d 846, 849 (8th Cir. 2004).  Moreover, the presumption of correctness of findings of fact

applies to the factual determinations made by both the state trial court and the state appellate

court.  **Smulls**, 535 F.3d at 864-65.

Ground One - Suppression of Petitioner's Oral Statements. Petitioner urges that, while

there is evidence that Detective Stittum advised him of his right to remain silent, there was

no evidence establishing that he understood that Miranda[11] right, and his oral statement to

Detective Stittum should, therefore, have been suppressed.  (Pet. at 20, 20-24 [Doc. 1].)

Respondent counters that the state appellate court's decision that the record "squarely

refuted" this claim (Resp't Ex. F at 2) is supported by the record, is a finding of fact entitled

to deference by this Court, and is not rebutted by evidence presented by Petitioner.

The United States Court of Appeals for the Eighth Circuit has stated that

> [t]he question whether a defendant understood the Miranda warnings
> is a question of  fact . . . .  See Thai v. Mapes, 412 F.3d 970, 976 (8th Cir.
> 2005) (holding the determination that a defendant understood the Miranda
> warning "as it was explained to him" was a factual determination that
> "depend[ed] heavily on the trial court's appraisal of witness credibility and
> demeanor").

**Bell v. Norris**, 586 F.3d 624, 631 (8th Cir. 2009) (second alteration in original), cert. denied,

130 S.Ct. 1295 (2010).  The question whether a waiver of Miranda rights is valid is,

however, a question of law.  **Id.**

In Petitioner's direct appeal, the Missouri Court of Appeals concluded Petitioner's

claim that the State failed to show "he was informed of his right to remain silent and that he

---

[11] **Miranda v. Arizona**, 384 U.S. 436 (1966).

understood that right" was "squarely refuted" by the record. (Resp't Ex. F at 2.) In particular, the state appellate court recited Detective Stittum's trial testimony that Detective Stittum had advised Petitioner of his right to remain silent, Petitioner had indicated to the detective that he understood his <u>Miranda</u> rights, and Petitioner agreed to make a statement to the detective. (<u>Id.</u>) Petitioner has not raised a question about the basis of this state court finding or suggested a basis for overcoming the presumption of correctness that this Court "must attach to the state court's factual determination that [Petitioner] understood the <u>Miranda</u> warnings." **Bell**, 586 F.3d at 631. The available record does not support a determination that Petitioner's oral statement to Detective Stittum occurred when Petitioner misunderstood his right to remain silent, and that is the sole basis for Petitioner's contention that the statement should have been suppressed. Ground one is denied.

<u>Ground two - Exclusion of Expert Testimony on the Unreliability of Eyewitness Identifications.</u> Petitioner contends the trial court erred in excluding the expert testimony of Dr. Lieppe, who would testify about the unreliability of eyewitness identifications. Respondent points out that the state appellate court discussed state supreme court cases about the admission of expert testimony and concluded the trial court had not abused its discretion in excluding Dr. Lieppe's testimony. The question for this federal habeas court, Respondent suggests, is whether the state court's evidentiary ruling resulted in a federal constitutional violation.

A federal habeas court cannot re-examine state court determinations of state-law questions, **Estelle v. McGuire**, 502 U.S. 62, 67-68 (1991), and a state trial court's

evidentiary rulings are questions of state law, **id.**; **Garcia v. Mathes**, 474 F.3d 1014, 1017 (8th Cir. 2007); **Bounds v. Delo**, 151 F.3d 1116, 1119 (8th Cir. 1998).  <u>See</u> <u>also</u> **Taylor v. Bowersox**, 329 F.3d 963, 968 (8th Cir. 2003) ("A state's interpretation of its own law is virtually unreviewable by a federal court").  "A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process." **Garcia**, 474 F.3d at 1017 (internal quotation marks omitted) (quoting <u>Bucklew v. Luebbers</u>, 436 F.3d 1010, 1018 (8th Cir. 2006)).

The United States "Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." **Crane v. Kentucky**, 476 U.S. 683, 690 (1986) (internal quotation marks omitted) (quoting <u>California v. Trombetta</u>, 467 U.S. 479, 485 (1984)).  There are limits on this right, however.  <u>See</u> **Taylor v. Illinois**, 484 U.S. 400, 410 (1988) (a defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence"); **Garcia**, 474 F.3d at 1018 (noting a trial court may, without violating the constitution, exclude defense evidence that is repetitive, is only marginally relevant, or poses an undue risk of harassment, prejudice, or confusion of the issues (citing <u>Holmes v. South Carolina</u>, 547 U.S. 319, 326-27)); **Lannert v. Jones**, 321 F.3d 747, 753-54 (8th Cir. 2003) (quoting <u>Taylor</u>, 484 US. at 410); **Boysiewick v. Schriro**, 179 F.3d 616, 620 (8th Cir. 1999) (noting the right to present relevant testimony is not without limitation (quoting <u>Michigan v. Lucas</u>, 500 U.S. 145, 149 (1991)).  To establish  a due process violation in the exclusion of expert testimony, the

petitioner has a heavy burden to "'establish that a defendant's right to have a jury consider [expert testimony on the unreliability of eyewitness testimony in connection with an alibi defense] is a 'fundamental principle of justice.'" **Lannert**, 321 F.3d at 754 (discussing exclusion of expert testimony regarding battered spouse syndrome in connection with a self defense claim) (quoting the plurality and Justice Ginsberg's concurring opinions in Montana v. Egelhoff, 518 U.S. 37, 43, 58-59 (1996)). Petitioner has not satisfied this burden. Therefore, Petitioner has not demonstrated the trial court's exclusion of Dr. Lieppe's testimony infringed Petitioner's constitutional right to a meaningful opportunity to present a complete defense.

Nor has Petitioner established that the trial court's exclusion of Dr. Lieppe's testimony was otherwise so prejudicial that it amounted to a denial of due process. A state court's evidentiary ruling "'can form the basis for habeas relief under the due process clause only when [it is] so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process.'" **Osborne**, 411 F.3d at 917(quoting Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996)) This requires a "habeas petitioner [to] show that 'absent the alleged impropriety the verdict probably would have been different.'" **Skillicorn**, 475 F.3d at 972 (quoting Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995)).

The record here does not support a determination that the verdict would probably have been different if Dr. Lieppe's testimony had been admitted. As the state appellate court found, Petitioner's trial counsel cross-examined Day, an eyewitness to the shooting, (Resp't Ex. B at 593-679) and, during counsel's closing argument, addressed faults in Day's

identification of Petitioner (id. 967-86); and the murder victim, who was Petitioner's wife, identified Petitioner by screaming his name just before he shot her (id. at 768, 770). Considering the whole record, there was no violation of Petitioner's due process rights in the trial court's exclusion of Dr. Lieppe's testimony on the reliability of eyewitness identification. Ground two is denied.

Ground Five - Ineffective Assistance of Trial Counsel. Petitioner contends that his trial attorney provided ineffective assistance of counsel by failing to object to Instruction No. 9 due to the absence of a definition of "attempt." Respondent points out that, in addressing this claim, the state appellate court cited to **Strickland v. Washington**, 466 U.S. 668 (1984) (Resp't Ex. K at 2), and denied Petitioner's ineffective assistance of trial counsel claim upon concluding reasonably that firing a shotgun at another person at close range constitutes an attempt to cause serious physical injury.

An accused's Sixth Amendment right to the assistance of counsel is a right to the effective assistance of counsel. **Marcrum v. Luebbers**, 509 F.3d 489, 502 (8th Cir. 2007) (citing Kimmelman v. Morrison, 477 U.S. 365, 377 (1986)). "The right to effective assistance of counsel 'is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process.'" **Smith v. Rogerson**, 171 F.3d 569, 572 (8th Cir. 1999) (quoting Kimmelman, 477 U.S. at 374). "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [relevant proceeding] cannot be relied on as having produced a just result.'" **Jackson v. Gammon**, 195 F.3d 349, 354 (8th Cir.

1999) (quoting <u>Kellogg v. Skon</u>, 176 F.3d 447, 452 (8th Cir. 1999)) (second alteration in original). "To show a constitutional violation of the right to counsel a [petitioner] must show first, that counsel's performance was deficient, and second that counsel's errors prejudiced the defense." **Marcrum**, 509 F.3d at 502 (citing <u>Strickland</u>, 466 U.S. at 687).

To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" **Greiman v. Thalacker**, 181 F.3d 970, 972 (8th Cir. 1999) (quoting <u>Strickland</u>, 466 U.S. at 687). More specifically, a petitioner must demonstrate that "counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney." **Armstrong v. Kemna**, 534 F.3d 857, 863 (8th Cir. 2008) (citing <u>Strickland</u>, 466 U.S. at 687-94). "Only reasonable competence, the sort expected of the 'ordinary fallible lawyer,' is demanded by the Sixth Amendment." **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999) (quoting <u>Nolan v. Armontrout</u>, 973 F.2d 615, 618 (8th Cir. 1992)).

To establish prejudice, a petitioner must demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **Armstrong v. Kemna**, 590 F.3d 592, 595-96 (8th Cir.) (quoting <u>McCauley-Bey v .Delo</u>, 97 F.3d 1104, 1105 (8th Cir. 1996)), <u>cert. denied</u>, 130 S.Ct. 3369 (2010). "'A reasonable probability is [a probability] sufficient to undermine confidence in the outcome.'" **Armstrong**, 590 F.3d at 596 (quoting <u>McCauley-Bey</u>, 97 F.3d at 1105). The petitioner bears the burden of showing such a reasonable probability. **Lawrence v. Armontrout**, 961 F.2d

113, 115 (8th Cir. 1992).

The question of prejudice from counsel's performance need not be reached if the performance was not deficient.  See **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998).  Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to show prejudice.  **Williams v. Locke**, 403 F.3d 1022, 1025 (8th Cir. 2005) (citing Strickland, 466 U.S. at 697).

The Missouri appellate court reasonably resolved Petitioner's ineffective assistance of trial counsel claim by finding that counsel's lack of objection to Instruction No. 9 due to the absence of a definition of "attempt" may or may not have been unreasonable under applicable state law at the time of trial and, even if the failure to object on this basis was unreasonable, there was "no reasonable probability" that under the circumstances the result of the trial would have been different if trial counsel had objected.

This state court determination is supported by the record.  The trial record clearly shows undisputed evidence that someone with a shotgun shot at Walls while he was running away from the scene early on July 3, 1998.  These circumstances support a finding that the gunman attempted to cause, or took a substantial step toward causing, serious physical injury to Walls.  Moreover, there was sufficient evidence of record to support the jury's determination that the gunman was Petitioner.  The inclusion of a definition of "attempt" in Instruction No. 9 would not have changed the outcome of the trial of the first degree assault charge.  Therefore, Petitioner has not established any prejudice resulting from his trial attorney's failure to object to Instruction No. 9 on the grounds its lacked a definition of

"attempt."

Due to the absence of a showing of prejudice resulting from the trial attorney's conduct, the question of Petitioner's trial counsel's allegedly deficient performance need not be reached. **Williams**, 403 F.3d at 1025 (citing Strickland, 466 U.S. at 697). Ground five is without merit.

Ground Six - Ineffective Assistance of Appellate Counsel. Petitioner alleges his attorney on direct appeal was ineffective in failing to argue the trial court plainly erred in giving Instruction No. 9 without a definition of "attempt." Respondent counters that the state appellate court properly identified **Strickland**, supra, as providing the correct standard for analyzing the claim, and concluded there was no showing of prejudice because, even if the issue had been raised on appeal, the issue did not present reversible error, in part, because there was no dispute at trial regarding whether firing a gun at another person at close range is an attempt to cause serious physical injury. Therefore, Respondent argues, Petitioner's claim fails because he has not established any prejudice resulting from his direct appeal counsel's failure to present such an issue on appeal.

It is well established that the Sixth Amendment guarantees the right to effective assistance of counsel on direct appeal. See **Evitts v. Lucey**, 469 U.S. 387, 396-97 (1985); **Douglas v. California**, 372 U.S. 353, 357-58 (1963); accord **Morales v. Ault**, 476 F.3d 545, 550 (8th Cir. 2007) (noting a defendant in a criminal case is entitled to the effective assistance of counsel on direct appeal and at trial). The proper standard for evaluating a claim of ineffective assistance of appellate counsel is that set forth in **Strickland**, supra.

**Smith v. Robbins**, 528 U.S. 259, 285 (2000); **Boliek v. Bowersox**, 96 F.3d 1070, 1073 (8th Cir. 1996). Thus, to be successful a habeas petitioner must show that the appellate attorney's performance was below the reasonable standard of competence and that there is a reasonable probability that the result would have been different absent this deficient performance. See **Strickland**, 466 U.S. at 687; **Gee v. Groose**, 110 F.3d 1346, 1352 (8th Cir. 1997).

Importantly, if an issue an appellate attorney failed to raise on appeal is not meritorious, then appellate counsel cannot be considered ineffective for having failed to argue that meritless issue on appeal. See **Grubbs v. Delo**, 948 F.2d 1459, 1466-67 (8th Cir. 1991) (finding no merit to the petitioner's argument that his confession was inadmissible and, therefore, the petitioner's direct appeal counsel "could not have been ineffective for failing to argue the issue"); **Thompson v. Jones**, 870 F.2d 432, 435 (8th Cir. 1988) (the petitioner's double jeopardy claim was without merit, so there was no prejudice and the "petitioner [wa]s not entitled to any [federal habeas] relief on the grounds of ineffective assistance of counsel" on appeal). Moreover, an attorney's failure to raise on appeal an issue subject to plain error review may not constitute the ineffective assistance of appellate counsel. **Gee**, 110 F.3d at 1352.

For the prejudice element of his ineffective assistance of appellate counsel claim, Petitioner "must show a reasonable probability that, but for his counsel's unreasonable failure to [assert the instruction issue on appeal], he would have prevailed on his appeal." **Smith**, 528 U.S. at 285; accord **Link v. Luebbers**, 469 F.3d 1197, 1205-06 (8th Cir. 2006) (internal quotation marks omitted) (quoting Smith, 528 U.S. at 285).

As with an ineffective assistance of trial counsel claim, the Court may resolve an ineffective assistance of appellate counsel claim by finding either no prejudice or no deficient performance and, if either element is not satisfied, the Court does not need to address the other element. **Smith**, 528 U.S. at 286 n. 14.

Here, the fatal flaw in Petitioner's argument is that the state appellate court that reviewed this challenge in his postconviction proceeding would have reviewed the issue had it been raised on direct appeal, and that court found the issue would not have constituted reversible plain error. (Resp't Ex. K at 7.) Therefore, Petitioner's argument that the issue, had it been raised and briefed on direct appeal, would have resulted in reversible error is refuted by the very court that would have decided the question on direct criminal appeal. Because an attorney cannot provide ineffective assistance in leaving an unwinnable issue out of a direct appeal, and Petitioner would not have prevailed on direct appeal if the issue had been included in that appeal, Petitioner's claim lacks merit. Ground six is denied.

<u>Hearing.</u>  Petitioner summarily asks for a hearing, without citing 28 U.S.C. § 2254(e)(2) and related case law.  <u>See</u> Pet. (Doc. 1 at 65); Reply at 9 (Doc. 14 at 9). Respondent has not addressed these requests.

Only when a "habeas petitioner 'was unable to develop his claim in state court despite diligent effort' is an evidentiary hearing not barred by" the statute. **Williams v. Norris**, 576 F.3d 850, 860 (8th Cir. 2009), (quoting <u>Williams v. Taylor</u>, 529 U.S. 420, 437 (2000)), <u>petition for cert. filed</u>, __ U.S.L.W. __ (U.S. Apr. 22, 2010) (No. 09-10382).  Petitioner has not argued or shown he was unable to develop any of his habeas claims in state court

"despite [his] diligent effort."  Moreover, Petitioner "has not argued that either exception in

§ 2254(e)(2)(A) and (B) applies, and it is apparent that neither does."  **Id.** at 862.

Even if the evidentiary hearing is not statutorily barred, it is within this Court's

discretion whether or not to grant such a hearing.  **Id.**  The United States Supreme Court has

noted that the basic rule that the district courts in habeas cases have "sound discretion"

whether or not to grant an evidentiary hearing has not changed with the passage of the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  **Schriro v. Landrigan**,

550 U.S. 465, 473 (2007).  There is no need for an evidentiary hearing on the four claims

that were not procedurally barred because the available record allows consideration of those

claim on their merits; no further development of facts is necessary to resolve those claims.

The other claims are procedurally barred and may not be further considered by a federal

habeas court.  Accordingly, the Court concludes it is appropriate to deny a hearing based on

the available record.  See **Crawford v. Norris**, 363 Fed. Appx. 428 (8th Cir. 2010)

(unpublished per curiam opinion) (affirming district court's decision not to hold an

evidentiary hearing in a habeas case in which the state postconviction court had not held a

hearing).  Therefore, Petitioner's requests for an evidentiary hearing are denied.

Appointment of Counsel or Special Master.  Petitioner summarily asks for appointed

counsel and for the appointment of a special master.  Reply at 9 (Doc. 14 at 9).  Respondent

does not address these requests.

There is no constitutional or statutory right to appointment of counsel in habeas

corpus proceedings, see **Morris v. Dormire**, 217 F.3d 556, 558 (8th Cir. 2000); "instead,

[the appointment of counsel] is committed to the discretion of the trial court," **McCall v. Benson**, 114 F.3d 754, 756 (8th Cir. 1997) (citing <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555-57 (1987)).  In considering whether to appoint counsel, the factual and legal complexity of the case and the petitioner's ability to investigate and articulate his claims should be considered.  **Morris**, 217 F.3d at 558-59; **Nachtigall v. Class**, 48 F.3d 1076, 1081-82 (8th Cir. 1995).  Moreover, where the issues involved can be properly resolved without an evidentiary hearing, the court does not abuse its discretion in denying a request for appointment of counsel.  <u>See</u> **Hoggard v. Purkett**, 29 F.3d 469, 471-72 (8th Cir. 1994).

The issues presented in the petition are neither factually nor legally complex, are articulately and appropriately advocated by Petitioner, and are capable of being resolved without an evidentiary hearing.  Petitioner's requests for the appointment of counsel are, therefore, denied.  Petitioner's summary request for the appointment of a special master is also denied.

## Conclusion

Petitioner properly presented four claims for relief to the state courts. As to those claims, the state courts' conclusion that the claims were without merit are not contrary to clearly established federal law, are not an unreasonable application of such law, and are not an unreasonable determination of the facts. Petitioner's two other claims are procedurally barred. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's requests for the appointment of counsel, the appointment of a special master, and an evidentiary hearing are **DENIED**.

**IT IS FINALLY ORDERED** that the 28 U.S.C. § 2254 petition of Dwayne Morgan is **DENIED** without further proceedings.

An appropriate Judgment shall accompany this Memorandum and Order.


/s/ Thomas C. Mummert, III

THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE


Dated this  7th  day of September, 2010.